Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST<br><br>Demandante-Apelado<br><br>v.<br><br>SUCESIÓN DE NILDA ESTHER ROBLEDO RIVERA, también conocida como NILDA E. ROBLEDO RIVERA Y/OTROS<br><br>Demandado-Apelante | TA2025AP00327 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala Superior de Fajardo<br><br>Caso Núm.<br><br>RG2022CV00300<br><br>Sala: 307<br><br>Sobre:<br><br>COBRO DE DINERO Y EJECUCION DE HIPOTECA POR LA VIA ORDINARIA |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de marzo de 2026.

Comparece la parte apelante, señor Juan Rosado Robledo, solicita la reconsideración y enmienda de la sentencia sumaria emitida el 24 de marzo de 2025 y notificada al siguiente día por el Tribunal de Primera Instancia, Sala Superior de Fajardo. En el dictamen apelado el foro primario dictó sentencia sumaria a favor de la parte apelada, *U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For Rcf 2 Acquisition Trust*, ordenó el pago de la deuda reclamada en la demanda, más las costas, y gastos de abogado pactados en la escritura de hipoteca relacionada.

Por los fundamentos expuestos en esta sentencia, *modificamos* la sentencia sumaria apelada.

**-I-**

El 19 de julio de 2022, el acreedor original Gitsit Solutions, LLC presentó demanda en cobro de dinero y ejecución de hipoteca contra la señora Nilda Esther Robledo Rivera como persona, en la cuota viudal usufructuaria del caudal relicto de su anterior esposo el señor Juan Rosa Sánchez, y como codeudora, junto a la sucesión Rosa Sánchez, del préstamo evidenciado en el pagaré hipotecario objeto de la demanda. Conforme a las alegaciones, el 16 de septiembre de 2005, la demandada y el señor Rosa Sánchez, suscribieron un pagaré hipotecario a favor de *Associates International Holdings Corporation* h/n/c *Associates Finance*. El préstamo vencía al 21 de septiembre de 2030, por la cantidad principal de $77,249.99, interés anual de 6.92%, y pago mensual de $542.09. En garantía quedó otorgada una *Hipoteca en Garantía de Pagaré* evidenciada en la escritura pública. El préstamo hipotecario fue enmendado dos veces, el 29 de agosto de 2009. Las partes establecieron un nuevo principal de $71,996.49, a una tasa de interés de 6.668%, con un monto diferido de $144.31 para un nuevo pago mensual de $530.19, con nueva fecha de vencimiento al 21 de diciembre de 2030. El segundo cambio ocurrió el 30 de julio de 2014, la deuda quedó con un principal de $65,051.81, tasa de interés al 6.668%, monto diferido de $1,385.12 y con fecha de vencimiento al 21 de junio de 2032.

La parte demandante alegó que, los demandados incumplieron con el pago de las mensuales desde el 21 de junio de 2017. En consecuencia, luego de varios avisos de cobro, el acreedor declaró vencida la deuda, por ello, acudió a la vía de apremio para recuperar $60,119.69 de principal, más intereses al 6.668% anual desde el 21 de mayo de 2017, $1,732.12 como monto diferido, y otros créditos accesorios. El 12 de septiembre de 2022 la parte apelante compareció por derecho propio, admitió la existencia de la

deuda y el impago del préstamo hipotecario. Explicó las razones por la cuales el pago mensual del préstamo quedó atrasado. En particular aseveró que para el 2017 fue sometido a cirugía, y en consecuencia, debió guardar absoluto reposo para recuperar adecuadamente. Informó que, su madre murió el 30 de mayo de 2017, y su padre el 25 de junio de 2014. Acompañó al escrito las actas de defunciones de sus padres y expresó ser el único hijo de la pareja pues sus hermanos habían fallecido. Según las constancias en el expediente electrónico, la única familia que tenía es una sobrina. Añadió que, en aquel momento sufría de otras condiciones médicas, algunas crónicas, que junto a su recuperación posquirúrgica impidieron el pago de la mensualidad de la hipoteca, pagos que efectuaba desde mucho antes de la muerte de su madre. Debido a las razones antes resumidas, el apelante aseveró haber quedado impedido de trabajar horas extras para cubrir el pago mensual de la hipoteca de la casa de su progenitora, de ahí el impago.

El 13 de septiembre de 2022 la parte demandante enmendó las alegaciones de la demanda debido al fallecimiento de la señora Robledo Rivera para incluir a la sucesión de esta e identificó al apelante como parte de la sucesión de la señora Robledo Rivera. El resto de los posibles miembros del caudal relicto quedó identificado como personas de nombres desconocidos. Los nuevos emplazamientos fueron expedidos, y el 3 de octubre de 2022 el apelante fue emplazado personalmente por la parte apelada.

El 30 de noviembre de 2022 la parte apelante compareció mediante representación legal y contestó la demanda enmendada. Alegó que, estaba en proceso de presentar las peticiones de declaratorias de herederos de sus padres, y solicitar una certificación negativa de testamento. Admitió que, sus padres eran los titulares registrales de la propiedad hipotecada, pero, contrario

a su anterior admisión, negó las alegaciones relacionadas con la deuda en disputa.

El 17 de febrero de 2023 la parte demandante presentó *Solicitud de Sentencia Sumaria.* En la moción de sentencia sumaria, el apelado solicita que, el monto de la deuda debe: "ser recobrado contra la propiedad aquí en controversia y se ordena la ejecución de la garantía hipotecaria y por consiguiente la venta en pública subasta del bien inmueble hipotecado". El 27 de febrero de 2023 el apelante presentó *Moción al Amparo de la Regla 36.6 de Procedimiento Civil para que se Deniegue Solicitud de Sentencia Sumaria o se Posponga su Evaluación hasta que se Conduzca el Descubrimiento de Prueba.* El foro apelado accedió a la solicitud del apelante y postergó la disposición de la moción de sentencia sumaria hasta finalizado el descubrimiento de prueba. Entre tanto, la parte demandante solicitó ser sustituida por la parte apelada como el nuevo acreedor demandante y la sustitución de parte fue autorizada.

El 4 de marzo de 2025 la parte apelada solicitó al tribunal que diera por sometida, sin oposición, la moción de sentencia sumaria antes referida. El foro apelado admitió la solicitud de sentencia sumaria sin oposición, y procedió a resolver el asunto. El 24 de marzo de 2025, notificada el 25 del mismo mes, el foro primario dictó la sentencia sumaria objeto de este recurso apelativo. En la sentencia, el foro apelado consignó las siguientes determinaciones de hechos:

1. El 16 de septiembre de 2005, los deudores obligacionales, Juan Rosa Sánchez y Nilda Esther Robledo Rivera suscribieron un Pagaré a favor de Associates International Holdings Corporation h/n/c Associates Finance, mediante el cual se obligaron a pagarle la cantidad de $77,249.99 de principal más intereses al 6.92% anual, recargos a razón del 5% de cada pago vencido no recibido dentro de los quince (15) días después de la fecha de vencimiento, más el 10% del principal para costas, gastos y honorarios de abogado.

2. Para garantizar el pagaré antes mencionado, los deudores obligacionales, Juan Rosa Sánchez y Nilda Esther Robledo Rivera, otorgaron una Hipoteca en Garantía de Pagaré el 16 de septiembre de 2005, por la suma principal de $77,249.99 de principal más intereses al 6.92% anual, recargos a razón del 5% de cada pago vencido no recibido dentro de los quince (15) días después de la fecha de vencimiento, más el 10% del principal para costas, gastos y honorarios de abogado en caso de reclamación judicial según consta de Escritura Número 580 otorgada en Río Grande, Puerto Rico, ante el Notario Público Félix R. Figueroa Caban sobre la siguiente propiedad::

> ---**RÚSTICA**: Parcela marcada con el número 59-A en el plano de parcelación de la Comunidad Rural Candal del barrio Zarzal del término municipal de Río Grande con una cabida superficial de 0.2246 cuerdas, equivalentes a 882.92 metros cuadrados. En lindes por el NORTE, con parcela 59 de la comunidad; por el SUR, con parcela 59-B de la comunidad; por el ESTE, con terrenos del señor Félix Sánchez; y por el OESTE, con calle número cinco de la comunidad. ------------------------------

> ---Consta inscrita al folio 171 del tomo 227 de Río Grande, finca número 10814A, Registro de la Propiedad de Puerto Rico, Sección Tercera de Carolina. ----------------------------------

> ---La hipoteca objeto de esta ejecución se encuentra inscrita al folio 111 vuelto del Tomo 475 de Río Grande, finca número 10814A, inscripción 8ª.--------

3. Las partes pactaron que la cantidad de $77,249.99 servirá como tipo mínimo para la primera subasta en caso de un procedimiento de ejecución de hipoteca.

4. La hipoteca consta debidamente inscrita en el registro de la propiedad según surge de la Certificación Registral que obra en autos.

5. El 29 de agosto de 2009, la parte demandada modificó los términos de la obligación evidenciada por el pagaré hipotecario mediante documento titulado "Acuerdo de Ajuste de Términos", para un nuevo principal de $71,996.49, una tasa de interés de 6.668%; un pago diferido de $144.31; nuevo pago mensual de $530.19. Se pactó además que la nueva fecha de vencimiento seria 21 de diciembre de 2030.

6. El 30 de julio de 2014, la parte demandada modificó nuevamente los términos de la obligación evidenciada por el pagaré hipotecario mediante documento titulado "Acuerdo de Ajuste de Términos", para un nuevo principal de $65,051.81, a una tasa de interés de 6.668%; $1,385.12 como monto diferido. Se pactó además que la nueva fecha de vencimiento seria 21 de junio de 2032.

7. U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST, es la entidad con derecho a exigir el cumplimiento del instrumento por ser su tenedor.

8. La parte demandada ha incumplido con su obligación y adeuda a U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST, la suma de $60,119.69 de principal; intereses al 6.668%, los cuales continúan acumulándose hasta el saldo total de la deuda; un monto diferido que no genera intereses en la cantidad de $1,732.12, recargos a razón del 5% de cada pago vencido no recibido dentro de los quince (15) días después de la fecha de vencimiento; más las primas por seguro hipotecario y riesgo; recargos por demora; los créditos accesorios; adelantos hechos en virtud de la escritura de hipoteca y cualquiera otras cantidades pactadas en la escritura de hipoteca, desde la fecha antes mencionada y hasta la fecha de total pago de las mismas, más el 10% del principal para costas, gastos y honorarios de abogados pactado.

9. La deuda anteriormente relatada se encuentra vencida, es líquida y exigible.

10. La parte demandante realizó gestiones con la parte demandada para obtener el pago de las sumas antes indicadas, resultando éstas infructuosas.

11. La parte demandada no es menor de edad, ni incapacitada, y por información y creencia no se encuentra prestando servicios militares en el ejército de los Estados Unidos de América, ni de ningún país aliado conocido.

12. La parte demandada ha incumplido con los términos de la obligación antes referida, por la que la misma ha sido declarada vencida en su totalidad conforme estipulado en la cláusula de aceleración dispuesta en la escritura de hipoteca.

13. La parte demandada fue debidamente interpelada.

14. No se encuentra ante la consideración de la parte demandante una solicitud completada bajo el programa de "Loss Mitigation" que provoque la paralización de los procedimientos, por lo que no es de aplicación la paralización de los procedimientos bajo las disposiciones del Reglamento X y la Ley 169-2016.

El tribunal ordenó el pago de la deuda o en su defecto la venta judicial para cubrir el importe de la deuda. También, y como cuestión de derecho el foro primario concluyó que: "[d]e resultar cualquier deficiencia en el pago del crédito después de dicha subasta, el acreedor puede hacer efectiva tal deficiencia sobre otros bienes del deudor". Emitida la sentencia, el tribunal ordenó la

notificación del dictamen por edicto en consideración a las partes de nombre desconocido incluidas como demandadas en su capacidad individual o como parte de las comunidades de bienes hereditarios incluidas en la demanda. El 27 de marzo de 2025 el apelante presentó *Moción de Reconsideración y/o Enmienda de la Sentencia para Determinaciones de Hechos y Conclusiones de Derecho Adicionales*. El 25 de abril de 2025, la parte demandante-apelada presentó *Oposición a Moción de Reconsideración y /o Enmienda de la Sentencia para Determinaciones de Hechos y Conclusiones de Derecho Adicionales*. El 28 de abril de 2025 el foro de primera instancia denegó la moción de reconsideración promovida.

El 28 de mayo de 2025, el apelante presentó una primera apelación (KLAN202500485), la cual fue desestimada por prematura por falta de notificación de la sentencia apelada por edicto. El 11 de junio de 2025, la apelada acreditó la publicación de la sentencia en edicto mediante *Moción Sometiendo Evidencia de Publicación de Sentencia por Edicto*. El 7 de julio de 2025, el apelante presentó una segunda apelación (TA2025AP00092), también fue desestimada por falta de jurisdicción mediante Sentencia el 14 de julio de 2025, notificada el 16 de julio de 2025. Pendía el recibo del mandato de la apelación presentada el 28 de mayo de 2025.

En la sentencia para la segunda apelación eximimos al apelante de esperar por el mandato. Así, finalmente, el 9 de septiembre de 2025 el apelante compareció mediante la presente apelación señala el siguiente error:

> ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA CONTRA LA "PARTE DEMANDADA" EN GENERAL SIN ACLARAR QUE DEL EXPEDIENTE ANTE SU CONSIDERACIÓN SURGÍA QUE EL SR. ROSA ROBLEDO SOLO ACEPTÓ LA HERENCIA A BENEFICIO DE INVENTARIO Y QUE POR TANTO NO RESPONDE POR LA DEUDA CON SUS BIENES PERSONALES.

La parte apelada también compareció mediante alegato escrito. Por tanto, procedemos a resolver el presente recurso con el

beneficio de la comparecencia de las partes, el contenido del expediente y el derecho aplicable.

## -II-

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula el procedimiento relacionado a la presentación, consideración y disposición de una moción de sentencia sumaria. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, T. III, pág. 1038. Este mecanismo procesal faculta la solución rápida, justa y económica de los casos en los que no existen hechos materiales en controversia y sólo reste aplicar el derecho. *Oriental Bank v. Caballero García*, 212 DPR 671, 678-679 (2023); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Así pues, de la prueba que acompaña la solicitud de sentencia sumaria debe surgir la inexistencia de controversia sobre los hechos medulares del caso. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 277 (2021); *Zambrana García v. ELA et al.*, 204 DPR 328, 341-342 (2020). En otras palabras, el tribunal procederá a dictar la sentencia solicitada si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente". Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V. La parte que promueve la sentencia sumaria tiene el deber de exponer su derecho con claridad, y demostrar que, no existe controversia sustancial sobre algún hecho material. *Oriental Bank v. Caballero García, supra*, pág. 679; *Meléndez González et al. v. M. Cuebas, supra*, pág. 110.

Ciertamente, "[é]sta puede dictarse a favor o en contra del promovente según proceda en derecho". Cuevas Segarra, *op. cit.*, pág. 1040. La Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, provee para que el tribunal dicte sentencia sumaria a favor del promovente --de proceder en derecho-- si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). El hecho de presentar una moción de sentencia sumaria no garantiza la solución sumaria del pleito a favor del promovente. *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652, 666 (2000). "[E]l tribunal no deberá emitir una sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho, ésta no proceda". *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023).

Los foros apelativos nos encontramos en la misma posición que los foros de primera instancia al evaluar la procedencia de una solicitud de sentencia sumaria. *Cruz, López v. Casa Bella y otros*, *supra*, pág. 994; *Birriel Colón v. Econo y otro*, 213 DPR 80, 91 (2023); *Oriental Bank v. Caballero García*, *supra*, pág. 680. Sin embargo, nuestra función está limita a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y otro, supra*; *Segarra Rivera v. Int'l. Shipping et al., supra*, pág. 981; *Meléndez González et al. v. M. Cuebas, supra*, págs. 114-116.

### -III-

Hemos analizado meticulosamente la moción de sentencia sumaria de la parte apelada, con particular atención a los hechos propuestos, y a la evidencia anejada. De entrada, notamos que, la parte apelada incluyó una relación numéricamente organizada de párrafos en los que expresó el relato de hechos que propone como libre de controversia. Inclusive, para cada uno de los hechos, tuvo el cuidado de señalar alguna pieza de evidencia en forma de documento o juramento, para verificarlo. En atención a lo anterior, la parte apelada logró establecer mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a todos los hechos materiales y esenciales de su causa acción. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013).

En consecuencia, los hechos propuestos por la parte apelada quedan admitidos como libre de controversia, pero sujeto al intento de refutación de la parte apelante por medio de su oposición a la moción de sentencia sumaria.

Como expusimos, para la revisión de una sentencia sumaria, estamos en igual posición que el foro de primera instancia en cuanto al examen que podemos efectuar a la evidencia anejada por las partes a sus respectivas mociones. *Vera v. Dr. Bravo*, 161 DPR 308 págs. 334–335 (2004). Esto con el propósito de determinar qué hecho quedó incontrovertido, y cuáles deben ser adjudicados por el foro primario. *Íd.,* pág. 335. Lo anterior, necesariamente implica aquilatar la prueba, valorizarla en cuanto a su confiabilidad y veracidad, pero también descartar aquella que resulte inverosímil, increíble o poco confiable. *Meléndez González v. M. Cuebas, Inc.*, 193 DPR 100, 115-116 (2015). Según pudimos verificar la parte apelante no presentó un escrito de oposición. No solamente eso, la parte apelante aceptó la existencia de la deuda.

Por tanto, al igual que el foro primario debemos concluir la inexistencia de controversia en torno a la exigibilidad, liquidez y vencimiento de la deuda reclamada por la parte apelada. *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986).

Con todo lo anterior en mente y luego de haber estudiado con detenimiento la *Moción de Sentencia Sumaria,* así como la totalidad del expediente judicial ante nos, encontramos que, el apelado pide que, el monto de la deuda debe: "ser recobrado contra la propiedad aquí en controversia y se ordena la ejecución de la garantía hipotecaria y por consiguiente la venta en pública subasta del bien inmueble hipotecado". Por tanto, coincidimos con el foro apelado en cuanto a que "procede que se dicte Sentencia a favor de la parte demandante y en contra de la parte demandada, y que se ejecute con la venta de la propiedad hipotecada" descrita en la demanda.

Sin embargo, precisa señalar que, de resultar cualquier deficiencia en el pago del crédito después de la venta judicial, el acreedor no podrá recuperar tal insuficiencia de los otros bienes del apelante. Lo anterior, porque el Banco/apelado limitó su súplica en la *Moción de Sentencia Sumaria* a recobrar "solamente" con la venta en pública subasta. A lo antes, no se opuso el apelante. Es por todo lo anterior que, al revisar "de novo" conforme a la Regla 36 de Procedimiento Civil, *supra,* y concluimos que el foro apelado concedió un remedio no solicitado. Por tanto, colegimos que, en su proceder, erró el tribunal de instancia.

## -IV-

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, *modificamos* la sentencia apelada para determinar que, el apelado solo podrá recobrar su acreencia del valor obtenido de la venta del inmueble objeto de la demanda. Así modificada, *confirmamos* el resto de la sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones